```
               UNITED STATES DISTRICT COURT
               CENTRAL DISTRICT OF ILLINOIS


UNITED STATES OF AMERICA,   ) Docket No. 18-cr-10020
                            )
     Plaintiff,             )
vs.                         ) Peoria, Illinois
                            ) December 13, 2018
PETE EARL TAYLOR,           )
                            )
     Defendant.             )
_____)


               RECORD OF PROCEEDINGS
                 SENTENCING HEARING
         BEFORE THE HONORABLE JAMES E. SHADID
               UNITED STATES DISTRICT JUDGE


                  THE APPEARANCES

                PAUL B. MORRIS, ESQ.
               Assistant U.S. Attorney
          One Technology Plaza, Suite 400
                  211 Fulton Street
                   Peoria, IL  61602
              On behalf of the Plaintiff


               KARL W. BRYNING, ESQ.
         Assistant Federal Public Defender
             401 Main Street, Suite 1500
                   Peoria, IL  61602
              On behalf of the Defendant






             Nancy Mersot, CSR, RPR
       United States District Court Reporter
              100 N.E. Monroe Street
                  Peoria, IL  61602

Proceedings recorded by mechanical stenography,
transcript produced by computer-aided transcription.
```

1                (Proceedings were held in open court.)
2                THE COURT:  This is the United States v.
3    Pete Earl Taylor, 18-10020.
4                Mr. Taylor is present in open court with
5    Mr. Bryning.
6                Mr. Morris present for the government.
7                This matter is set for sentencing today
8    pursuant to a plea on September 6th, 2018, to two
9    counts -- to a two-count bill of indictment.
10               Count 1 charging possession of a contraband
11   weapon, and Count 2 charging possession of a
12   prohibitive object in prison.
13               A Presentence Report was ordered.  It has
14   been prepared.  Parties have received the same.  And
15   it appears that if there were any objections, they
16   have been addressed and resolved.
17               Is that correct, Mr. Morris?
18               MR. MORRIS:  That is correct, Your Honor.
19               THE COURT:  Mr. Bryning?
20               MR. BRYNING:  Yes, Your Honor.
21               THE COURT:  Court will then accept the
22   Presentence Report this day, which would have us at
23   the total offense level 11; Criminal History
24   Category VI; the guideline range of 27 to 33 months
25   on Count 1; six months on Count 2; supervised

release period of one to three years on Count 1; one year on Count 2; ineligible for probation; $4,000 to $40,000 fine; restitution is not at issue; $100 special assessment on Count 1; and a $10 special assessment on Count 2.

Do the parties agree those are the guideline provisions?

Mr. Morris?

MR. MORRIS:  Yes, Your Honor.

THE COURT:  Mr. Bryning?

MR. BRYNING:  Yes, Your Honor.

THE COURT:  Okay.  Any additions or corrections to the Presentence Report to be offered by the government?

MR. MORRIS:  No, Your Honor.

THE COURT:  From the defense?

MR. BRYNING:  No, Your Honor.

THE COURT:  Any formal evidence from either side?

MR. MORRIS:  Not from the government.

MR. BRYNING:  Judge, may I have a moment?

THE COURT:  You may.

And the Court has received what is Document 17, a letter from Angela Preyer -- I believe it is pronounced -- on behalf of Mr. Taylor.

1           MR. BRYNING:  Your Honor, I have a couple of
2   things that I would like to submit.
3           THE COURT:  All right.
4           MR. BRYNING:  One is an order of St. Francis
5   Ortho diagnosis relating to a medical condition that
6   Mr. Taylor has.
7           And the other I've just been handed by
8   Mr. Taylor, which is a --  appears to be progress
9   notes for a medical condition.
10          And Mr. Taylor, would you like me to submit
11  these into the record?
12          THE DEFENDANT:  Please.
13          MR. BRYNING:  Judge, I will show opposing
14  counsel and then tender them to the Court, Your
15  Honor.  Since they are medical records, I would ask
16  that they be placed under seal.
17          THE COURT:  That will be granted.
18          Okay.  Anything else?
19          MR. BRYNING:  No, Your Honor.
20          THE COURT:  All right.  Then any further
21  evidence from either side or did I just ask that?
22          MR. BRYNING:  You did, Judge.
23          THE COURT:  All right.  Argument as to
24  sentencing alternatives.
25          And I have a question before arguments

1  begin, the sentence that he is currently serving out
2  of the Western District of Missouri was a hundred
3  months.  According to the Presentence Report, it
4  appears that his anticipated release date is
5  April 28, 2024, and on that he had four years of
6  supervised release.
7         With four years of supervised release, does
8  that begin on the scheduled release date or if the
9  sentence here runs consecutive to that, would the
10 four years of supervised release then begin when he
11 is released from the sentence today?
12         PROBATION OFFICER:  Yes, sir.
13         THE COURT:  That's when it would begin?
14         PROBATION OFFICER:  Yes, sir.
15         THE COURT:  Okay.  Either party has -- wants
16 to take exception to that, let me know.
17         MR. MORRIS:  That sounds right, Your Honor.
18         THE COURT:  Okay.  Go ahead.
19         MR. MORRIS:  Your Honor, the need for Your
20 Honor's sentence today is, the government submits,
21 to promote respect for the law.
22         When I look at the defendant's history and
23 really his life as laid out in the report, it
24 strikes me that no man sets out as a goal to be
25 incarcerated for a large portion of his life.  And

going forward, certainly is the government's hope that this isn't the defining characteristic of the defendant's life.  The characteristic though as it has been since the defendant was young is really the opposite of promoting respect for the law; that from everything from driving here to this courthouse, to stopping at the red lights, to going to the grocery store and paying money for something, those minor things, to walking around and feeling safe and actually being safe, all of those require not just a respect for the law but an actual -- people following the law which enabled those things to occur.  And as I looked at the report, really the defining trait that jumps out that many of the defendants lack of or rather disrespect for the law, it deals with contraband, it deals with even trivial things like, seemingly trivial things but in the aggregate, don't promote respect for the law.  At the age of 19 providing false information to a cop when pulled over.

Number 32, a 59-year-old woman being struck in the back of the head, knocked to the ground, being caught by the police and then providing a false name again.

Age 26, now with a felony, possessing a

stolen firearm, providing a false name again to police.

Number 35, with four kilos of cocaine in the car, providing a false name to police again.

Number 36 -- before we get to 36, we have, while incarcerated, possession of drugs, similar to what we have, K2, even though it is indicted and pled as a prohibited object. The defendant in an interview referred to it as K2, spice, a prohibited drug.

Number 36, trafficking drugs into the institution. Even though that was dismissed, we see that as surrounding the conduct that he was held accountable for. At the end of 36, we have, while incarcerated, additional conduct of introducing drugs and alcohol in the facility.

And 39, more cocaine conduct, which he is currently serving; that brings us to the indictment of having the weapon and then having the K2, the prohibited object. His response to being interviewed by the Bureau of Prisons was "They are not mine. I'm holding them for somebody else."

We have a continual pattern of conduct of lying to law enforcement, the lack of respect for the law. And promoting respect for the law, that I

respectfully submit, doesn't require a perfect law, the perfect execution of law, or perfect actors to do that; but it isn't static at the same time. It requires for everybody to do their part in promoting respect for the law. And the government submits that the defendant through this conduct in the Bureau of Prisons has degraded a respect for the law.

Again, it is a sincere hope that the defendant turns this around when he is released. Being incarcerated cannot be his life's goal; that when he is released that he engages the law, follows the law; but for the consequence and to promote respect for the law, the government requests a guideline, a sentence, and that that sentence run consecutive to his current sentence.

Subject to any questions you may have.

THE COURT: Thank you, Mr. Morris.

MR. MORRIS: Thank you.

THE COURT: Mr. Bryning.

MR. BRYNING: Your Honor, Mr. Taylor is in his 50s. The time for getting in trouble is over.

And there was a letter that was sent in by his long-term girlfriend, Angela Preyer. And the one thing that she does get right in that letter is

1  that he is definitely not getting any younger or
2  going to be in better physical shape.  She describes
3  him as an older man in bad physical shape, by no
4  means capable of defending himself in a physical
5  attack.  She asks that he be placed in a medical
6  facility.
7            Now, Your Honor, Mr. Taylor, when he was
8  first questioned about this event was in prison.  He
9  spent the next five months in the Special Housing
10 Unit.  He then has spent the following eight months,
11 approximately, in the Tazewell County Jail.
12           This is a situation that could have been
13 handled internally with the prison taking away good
14 time or requiring him to sit in a Special Housing
15 Unit or transferring him to a different institution
16 or all of those things, but instead this was
17 referred as a new federal charge and here we are.
18 But the fact of the matter is that he has eight
19 months in custody on this case and spent another
20 five months in very difficult circumstances while in
21 prison in the Special Housing Unit.
22           The medical issues that Mr. Taylor has are
23 verified by both the Presentence Report and the
24 documents submitted in court today.  These medical
25 issues are real.  They are serious.  They are very

likely to cause him real pain now and in the future. They stem from a car accident long ago, but the problems are manifested today.  His mobility is affected.  He has problems getting up, sitting down, walking around.  These are likely to get worse in the future as he gets older.

Judge, it is our request that whatever sentence you impose, you take into account the time that he spent in the Special Housing Unit and reduce whatever sentence you choose to impose by those five months.

THE COURT:  Would he not be getting credit for those five months on his sentence out of the Western District of Missouri?

MR. BRYNING:  He would be getting credit for those but that's a different kind of custody from the normal custody that he would have been in.

THE COURT:  Okay.

MR. BRYNING:  We would also -- of course, he would receive credit for the eight months that he served in the Tazewell County Jail.

So we would request a medical facility, a judicial recommendation to a medical facility. Mr. Taylor may have a specific medical facility in mind.  I don't know if he does, then I would ask

1  that you make a judicial recommendation to that
2  specific facility.
3         So our request, Your Honor, is since
4  Mr. Taylor is already serving time for a case; that
5  this case could have been handled internally had the
6  prison chosen to handle it that way; that he receive
7  a sentence of time considered served, resulting in
8  immediate release on this case that's before you;
9  and that you not impose supervised release since he
10 will be serving a term of supervised release upon
11 his -- the end of his initial sentence.
12         Thank you, Judge.
13         THE COURT:  Thank you, Mr. Bryning.
14         Mr. Taylor, at this time you have an
15 opportunity to make a statement, if you wish.  You
16 can do so from there.  You can stand.  You can
17 remain seated.  Whatever you're the most comfortable
18 with, sir.
19         THE DEFENDANT:  Excuse me.  Your Honor, I
20 would just like to say, you know, I came before you
21 back in June.  Me and my attorney, worked out a plea
22 bargain for 27 months.  When I returned back to the
23 jail, there was another guy that came here with me,
24 he had a plea bargain as well for K2.
25         In my indictment, it says nothing about K2.

The prosecutor said that I referred to it as K2 when I was interviewed by the FBI.  They referred to it as K2.

In another case, I think that it was 10019, a case versus Steele, *United States v. Steele*, when he came back, he told me that his attorney wouldn't let him plead to it because it wasn't K2 at the time he was in court.  This was my differences with my attorney because it was saying K2 through the plea agreement.  In my indictment, it says nothing about K2.

THE COURT:  I'm not quite sure I understand the point that you're trying to make.

THE DEFENDANT:  I'm saying, yes, if this was presented to the grand jury that I had a narcotic and a weapon, it wasn't a narcotic.  But this is my discrepancies with my attorney is why I didn't take the 27 months on a plea, because it is saying that I had K2 and a weapon.

Now I pled out in open court because it didn't -- it wasn't making a difference.  I'm getting 27 months there regardless, if it was a K2 or it wasn't a K2.  And I'm explaining to my attorney the reason why I didn't want to sign it in open court with the plea agreement.  My attorney

1  advised me that I might be better off coming here
2  and taking an open plea and explaining to you the
3  reason why I didn't take the plea bargain because it
4  was saying I had K2.  I'm explaining -- I'm saying
5  this because I didn't have K2.  The weapon, I can't
6  deny it.  They got it listed as contraband.
7          I'm not trying to come to court today and
8  tell you that I'm a saint.  I'm explaining to you --
9  I'm trying to explain to you what the situation was,
10 the reason why I didn't take the 27 months then.  So
11 I take 27 months for -- what they call it -- a Next
12 Generation Herbal Potpourri.
13         THE COURT:  With that, the maximum you could
14 be sentenced to would be six months.
15         THE DEFENDANT:  Okay.
16         THE COURT:  Right now your range would be 27
17 to 33 months on the weapon.
18         Is that a correct statement, gentlemen?
19         MR. MORRIS:  That is correct, Your Honor.
20         MR. BRYNING:  Yes, Judge.
21         THE COURT:  Okay.  Mr. Morris, it looks like
22 you wanted to say something.
23         MR. MORRIS:  Having been on both cases, this
24 and the other referred to by the defendant, I hope
25 that this will clarify in the defendant's mind that

this is indicted as a prohibited object.  And so that's different then, and there is a provision in this statute to charge for having a drug.  We did not do that in Count 2.  And that's why it has a six-month maximum.

In the case that he is referring to, it was charged as having a scheduled I controlled substance, and those are two different indictments, two different consequences; and as Your Honor has indicated, it is the possession of the weapon that gets the 27 to 33 months.

And just to make the record really clear, the government is asking that Your Honor sentence, whatever sentence that Your Honor imposes, be for prohibited object in prison.  In other words, he was not allowed to have that object.  It was not anything that was sold at the commissary, and that that be the basis for Your Honor's ruling.

THE COURT:  Anything else you want to say, Mr. Taylor?

THE DEFENDANT:  I understand what he is saying.  He don't understand what I'm saying.  I was offered 27 months for K2 and a weapon.

THE COURT:  And you didn't take it because it wasn't K2.

```
 1              THE DEFENDANT:  Because it was not K2.
 2              THE COURT:  What about the 27 months?
 3              THE DEFENDANT:  I find it a little
 4   extensive --
 5              THE COURT:  Okay.
 6              THE DEFENDANT:  -- when you're saying they
 7   offered me 27 months for K2 and a knife.
 8              THE COURT:  All right.
 9              THE DEFENDANT:  Thank you.
10              THE COURT:  Thank you.
11              The Court having considered all of the
12   information before it, which includes the
13   Presentence Report; the sentencing guideline
14   calculations; the arguments of counsel; the exhibit
15   attached -- the exhibits presented as to the medical
16   condition of Mr. Taylor; the exhibit of the letter
17   from his, I think, long time fiancée is how she
18   referred to herself; Mr. Taylor an opportunity to
19   make a statement, and he does; the factors set forth
20   in 3553, I believe the following sentence is
21   sufficient but not greater than necessary to comply
22   with the purpose of the Act:
23              This is a situation where the Court believes
24   that the 3553 factors, specifically to promote
25   respect for the law, to afford adequate deterrence
```

1  to criminal conduct because -- have to try to deter
2  those that are already sentenced from bringing in
3  prohibited objects, regardless of what they may be,
4  but probably more importantly a weapon because the
5  safety of correctional staff and other inmates is
6  paramount in a prison sentence.  This also takes in
7  account the seriousness of the offense.
8         I believe a sentence of 27 months in the
9  Bureau of Prisons to Count 1 is sufficient but not
10 greater than necessary to comply with the purpose of
11 the Act, and six months for the prohibited object as
12 set forth in Count 2.  Those should run concurrent
13 with each other, so it is a period of 27 months.
14        The sentence though must run, in my mind,
15 should run consecutive to the sentence in the
16 Western District of Missouri, case number 15-cr-344.
17        I find no ability to pay a fine, so no fine
18 is imposed.
19        I also will order a special assessment of
20 $110; that is $100 in Count 1, $10 in Count II,
21 assessed, imposed, and payable immediately.
22        I will recommend that Mr. Taylor serve his
23 sentence in a medical facility.  Is there a specific
24 facility that you would request, Mr. Taylor?
25        THE DEFENDANT:  Rochester, Springfield.

1    THE COURT:  Rochester in Springfield,
2 Missouri?
3    THE DEFENDANT:  No, Rochester, Minnesota,
4 the Mayo Clinic; or Springfield, Missouri.
5    THE COURT:  Or Springfield, Missouri?
6    THE DEFENDANT:  Yes, sir.
7    THE COURT:  Mr. Morris, wish to weigh in on
8 that?
9    MR. MORRIS:  Just to be frank, Your Honor, I
10 have -- the first I'm hearing about this.  I do have
11 some concerns, which I think I need to air; in terms
12 of a history of really taking advantage of what are
13 gaps in security at facilities bringing contraband
14 in locations, I don't know what the security is like
15 in medical facilities.  I can't imagine that it is
16 greater, but the government does have some concerns
17 with this pattern of conduct at this facility, but I
18 don't have any specifics on it or specifics to
19 warrant my concern.
20    THE COURT:  I will say this, given the
21 conduct in this case of weapon and prohibited object
22 in prison, I will leave it to the Bureau of Prisons
23 to make the designation they think is appropriate.
24 I will ask them to consider the medical issues that
25 Mr. Taylor has when doing so.

1             With that in mind though, I don't believe
2    any term of supervised release needs to be imposed.
3    I will give parties an opportunity to weigh in on
4    that if you wish.  He has four years to serve in the
5    Western District of Missouri.  Any sentence here
6    would be concurrent with that.  The most that could
7    be assessed would be three years on Count 1 and one
8    year on Count 2.  I don't see any need to impose a
9    condition of supervised release here.  If the
10   Western District of Missouri believes, given the
11   circumstances of this case upon his release, that
12   conditions there should be modified to address any
13   additional concerns, they're perfectly capable of
14   doing so.
15            Anybody wish to be heard on that?
16            MR. MORRIS:  No, Your Honor.
17            MR. BRYNING:  No, Your Honor.
18            THE COURT:  Okay.  With that in mind, is
19   there anything else before appeal rights?
20            MR. MORRIS:  Not from the government.
21            MR. BRYNING:  No, Judge.
22            THE COURT:  I did say 27 months and six
23   months on each of Counts 1 and 2 concurrent with
24   each other and consecutive to the Western District
25   of Missouri, docket number 15-cr-344.  With that in

1 mind, Mr. Taylor, you do have appeal rights.  You
2 must first file within 14 days or ask Mr. Bryning to
3 do so on your behalf a notice of appeal.
4         Thank you, sir.  Good luck.
5                    ****
6
7    I certify that the foregoing is a correct
8 transcript from the record of proceedings in the
9 above-entitled matter.
10
11
12 s/Nancy Mersot        Date:  January 10, 2019
13 Court Reporter